## A92A0807. GATES v. THE STATE.
(422 SE2d 232)

JOHNSON, Judge.

Larry Gates was convicted by a jury of child molestation, statutory rape and rape. He appeals from his conviction and the denial of

his motion for new trial.

1. Gates argues that there was insufficient evidence at trial to support the jury's verdict. We disagree.

An eyewitness to the incident testified at trial that he saw Gates, known in the neighborhood as Shorty Fat, lying on top of six-year-old Cassandra Mayes on a playground at the East Lake Meadows housing project. He testified further that Gates' clothing was halfway down and that when Gates saw the witness, he got off the girl, pulled up his clothes and ran. The State also introduced the hospital records and testimony of the pediatrician who examined the victim following the incident. The pediatrician testified that the child's condition could only have been caused by a sexual assault. The victim identified Gates as the assailant both in photo lineups and at trial, as well as testifying at the trial regarding the incident. Reviewing the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found Gates guilty beyond a reasonable doubt of all the charges. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gates argues that the trial court erred in denying his motion for a mistrial on the basis that a state's witness improperly placed his character in issue. Police investigator Green testified that the victim identified Gates from a photographic lineup. In explaining how photographic lineups are prepared, Green testified that the photographs were of people who had been arrested. Following objection, a curative instruction was given to the jury. Gates bases his argument on *Roundtree v. State,* 181 Ga. App. 594 (353 SE2d 88) (1987) which relied on the special concurrence in *Clark v. State,* 249 Ga. 18 (287 SE2d 523) (1982). In both *Roundtree* and *Clark,* captions appeared on the photographs revealing that the photographs were taken prior to the date of the current offense, thereby indicating a prior arrest and putting the defendant's character in issue. In the instant case, there were no captions on the photographs and Green's testimony did not necessarily imply that Gates had a *prior* arrest. This case is therefore controlled by *Holloway v. State,* 190 Ga. App. 528 (379 SE2d 542) (1989). "Since there was nothing on this photograph to indicate that it was made on a prior occasion . . . we find no undue prejudice to appellant in its admission and, consequently, no error." Id. at 529.

3. In his third enumeration of error, Gates asserts that the trial court erred in denying his motion for a new trial in that evidence discovered after the trial may reveal that certain elements of the eyewitness' testimony were false. The state's witness testified that he had gone to school with another witness to the crime. Gates argues that this statement could not be verified in a search of school records following the trial. Two of the prongs of the six-part test established for granting a new trial based on newly discovered evidence are: 1) that

the newly discovered evidence is so material that it would probably produce a different verdict; and 2) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. See *Croy v. State*, 195 Ga. App. 500, 501 (393 SE2d 756) (1990). Whether or not a second eyewitness to the crime actually attended school with the witness does not touch any of the essential elements of the crime about which the witness testified. The only purpose for which this new information could be used would be to undermine the credibility of the witness. As such it clearly would not satisfy the requirements for a new trial.

Similarly Gates argues that the witness testified that he gave the second witness' real name to the police during the investigation, while the police investigator testified that they only knew the nickname of the second witness. This inconsistency goes only to the credibility of the witness, a province expressly reserved to the jury. *Lucas v. State*, 192 Ga. App. 231 (1) (384 SE2d 438) (1989).

4. Finally, Gates asserts that the trial court erred in the denial of a new trial on the grounds that prosecutorial misconduct was used to subvert the protections afforded by the rule of sequestration. During her testimony, Cassandra, who was seven years old at the time of the trial, was unable to identify Gates. A review of the transcript indicates that immediately after Cassandra's testimony, a lunch recess was held. Prior to the resumption of the trial, Cassandra was sitting at the back of the courtroom with her mother. After seeing Gates walk into the courtroom Cassandra returned to the stand and indicated that she recognized Gates as the man who threw her down in the playground.

There is no evidence in the record that the state aided or abetted in violating the sequestration rule. Even if the sequestration rule had been violated, "[T]he Supreme Court has held that 'a witness who has violated the rule of sequestration in a criminal case shall not be prevented from testifying. (Cits.)' [Cit.]" *Weathers v. State*, 202 Ga. App. 849, 850 (415 SE2d 690) (1992). Violation of the sequestration rule would go to the issue of credibility and not admissibility of the testimony of the witness. *O'Kelley v. State*, 175 Ga. App. 503, 505 (1) (333 SE2d 838) (1985). Therefore the trial court correctly denied the motion for a mistrial.

*Judgment affirmed. Carley, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 8, 1992.

*James Archie,* for appellant.
*Robert E. Wilson, District Attorney, J. George Guise, Robert E.*

*Statham III, Anne G. Maseth, Assistant District Attorneys,* for appellee.